IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAVID L. WEIK,<br><br>                 Plaintiff,<br><br>   vs.<br><br>THRESA A. GOLDBERG, et al.,<br>individually; FRANK BROAD, et al.,<br>individually; SARA VILHUBER, et al.,<br>individually; DOES I-X; JANE DOES I-<br>X; CORPORATIONS I-X, and XYZ<br>PARTNERSHIPS I-X,<br><br>              Defendants. | CV 14-182-M-DLC-JCL<br><br><br>ORDER, and FINDINGS<br>AND RECOMMENDATION |

Before the Court is Defendants Thresa Goldberg, Frank Broad, and Sara

Vilhuber's Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff David Weik's

complaint for failure to state a claim upon which relief can be granted.  Also

before the Court is Weik's motion requesting leave of Court to file an amended

complaint pursuant to Fed. R. Civ. P. 15.  For the reasons discussed the Court

directs the Clerk of Court to file Weik's proposed amended pleading.  And the

Court recommends that Defendants' motion to dismiss, as applied to Weik's

amended pleading, be granted, and this action be dismissed.

## I.    <u>Procedural Background</u>

As a preliminary matter, the Court will sort out the procedural context of the

1

two referenced motions now before the Court. On July 1, 2014, Defendants filed

their Rule 12(b)(6) motion to dismiss. In response, on July 14, 2014, Weik filed

his motion requesting leave of Court to file his amended pleading under Rule 15.

Rule 15, however, permits a plaintiff to file an amended pleading "once as a

matter of course within [...] 21 days after service of a motion under Rule 12(b)[.]"

Fed. R. Civ. P. 15(a)(1)(B). Based on the timing of Weik's motion, Weik is

entitled to file his amended complaint as a matter of course, without leave of

Court.

Therefore, IT IS ORDERED that Weik's motion for leave to file his

amended pleading is DENIED as unnecessary. The Clerk of Court is directed to

file Weik's First Amended Original Complaint (Doc. 7-1) (hereinafter "Amended

Complaint") as of July 14, 2014, and it shall serve as the operative pleading.

Weik advises, and the Court finds, that his Amended Complaint "does not

change anything in Plaintiff's Original Complaint." (Doc. 7 at 1.) But the

Amended Complaint adds a new claim under the Clayton Act at 15 U.S.C. § 15,

and new claims under Montana law for civil conspiracy and for tortious

interference with business contracts. The allegations of Weik's original complaint

are otherwise fully set forth in his Amended Complaint.

In response to Weik's motion to amend, Defendants expressly incorporated

their arguments from their motion to dismiss into their brief in opposition to the motion to amend. (Doc. 10 at 2.) They argued the Amended Complaint failed to state any claim for relief for all the same reasons the Original Complaint failed to state a claim.

Weik filed a reply brief in support of his motion to amend. Weik asserted, consistent with his response to Defendants' motion to dismiss, that his allegations in his Amended Complaint sufficiently stated claims for relief. He expressly incorporated all of is arguments from his response to the motion to dismiss into his reply brief filed with respect to his motion to amend. (Doc. 11 at 2.)

Based on the foregoing, the Court will address all arguments relative to Defendants' motion to dismiss as they apply to the allegations in Weik's Amended Complaint.

## II.    **Factual Background**

This action arises from Defendants' alleged individual and conspiratorial conduct purportedly aimed at depriving Weik of his property and economic livelihood. Beginning in 2011 and continuing through 2013, Weik and Goldberg worked together to form and commence two business ventures under the names Misty Blu Trail Rides and H.E.A.R.T. (Healing Equine Assisted Rehabilitation Therapy). Weik and Goldberg each agreed to engage in various business startup

tasks, such as website development and non-profit entity formation. According to Weik, Goldberg did not actively follow through on, or promptly complete, the business startup tasks she agreed to perform.

During the business formation time period Weik, Goldberg and Broad also resided together at various times. Weik contends the personal relationships between the three of them interfered with Weik and Goldberg's efforts to make progress towards getting the businesses up and running.

In January and February 2014, Goldberg allegedly began engaging in conduct adverse to Weik's interests in the businesses. For example, she purportedly closed bank accounts for both business entities without proper authority, removed Weik's phone number from a business website, redirected financial donations for one of the businesses to her personal account, and attempted to gain exclusive control over each business's accounts.

After several confrontational meetings regarding the businesses, Goldberg informed Weik in April of 2014 that she intended to obtain a protective restraining order against Weik. On May 16, 2014, Weik received Goldberg's temporary restraining order that Goldberg had apparently obtained from a state court. Goldberg also filed a civil action against Weik in the Missoula County Justice Court apparently stemming from their business and personal relationships and

activities.

Subsequently, in June 2014, Goldberg obtained a permanent order for restraint against Weik. The scope of the restraining order encompasses Vilhuber's residence, and extends to cover both (1) real property that Weik intended to purchase, and (2) a horseback riding trail access point that Weik intended to use for the businesses. Weik asserts Goldberg, Broad and Vilhuber (Goldberg's sister) presented false testimony to the court to support and obtain the permanent restraining order.

Weik asserts Goldberg engaged in conduct which harmed his business opportunities. He asserts she made false statements about him on social media web sites, and caused a potential business customer to post a negative comment about one of the businesses on the business's web site.

Weik invokes federal jurisdiction under 28 U.S.C. § 1331, advancing claims against all Defendants under 42 U.S.C. § 1983, the Sherman Act, 15 U.S.C. § 1, et seq., and the Clayton Act at 15 U.S.C. § 15. He also invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 over numerous state law claims. Specifically, he asserts Goldberg is liable for breach of their operating agreement entered in forming Misty Blu Trail Ride, LLC, and that all Defendants are liable for tortious interference, defamation, harassment, false light invasion of privacy,

libel, slander per se, malicious prosecution, abuse of process, civil conspiracy, and negligent infliction of emotional distress.

## III.   Applicable Law - Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss.  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

## IV.   Discussion

Because Weik is proceeding *pro se* the Court must construe his pleading

6

liberally, and the pleading, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). The Court will apply these standards to Weik's Amended Complaint.

A.     **42 U.S.C. § 1983**

Weik purports to assert a federal claim under 42 U.S.C. § 1983 alleging the Defendants violated his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Section 1983 states, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 is the vehicle through which a plaintiff can present claims under federal law against a state official or employee if the plaintiff can establish that the official or employee was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

The first element under section 1983 requires that a defendant must "have exercised power 'possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Therefore, section 1983 generally does not apply to the conduct of private parties. *Kirtley*, 326 F.3d at 1092. "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

In limited circumstances, however, a private party's conduct could constitute state action for purposes of imposing liability on that party under section 1983. The Ninth Circuit Court of Appeals has recognized the following four tests used to identify private action that qualifies as state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley*, 326 F.3d at 1092 (quotation omitted). The fundamental consideration in each test is whether the private conduct is fairly attributable to the state. *Id*. Ultimately, a plaintiff bears the burden of establishing that a particular defendant was a state actor under any applicable test. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

Weik argues Defendants are liable for violations of his constitutional rights

under two of the foregoing tests.  First, he asserts Goldberg's use of the state

judicial system to file a civil action and to obtain a restraining order demonstrates

a sufficient nexus with governmental action.  Second, he asserts the three

individual Defendants engaged in "joint action" with each other to cause harm to

Weik.  But neither of Weik's asserted grounds are supported by allegations which

satisfy the tests.

Under the governmental nexus test, a private party's conduct may be

deemed state action if "there is such a close nexus between the State and the

challenged action that the seemingly private behavior may be fairly treated as that

of the State itself."  *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood Academy v.*

*Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001)).  The

nexus test generally requires evidence that the private actor is "'entwined with

governmental policies,' or [...that the] government is 'entwined in [the private

actor's] management or control[.]'"  *Brentwood Academy*, 531 U.S. at 296

(citations omitted).

The Ninth Circuit has identified various factors to consider in determining

whether there is a "close nexus" as follows:  "(1) the organization is mostly

comprised of state institutions; (2) state officials dominate decision making of the

organization; (3) the organization's funds are largely generated by the state

institutions; and (4) the organization is acting in lieu of a traditional state actor."
*Villegas v. Gilroy Garlic Festival Association*, 541 F.3d 950, 955 (9th Cir. 2008).

Weik's allegations in his pleading regarding Goldberg's use of the judicial system do not include any factual allegations suggesting that the requisite entwined governmental policies and private conduct existed.  Weik does not advance facts plausibly supporting the various factors identified in *Villegas*. Goldberg's mere use of the state judicial processes and legal procedures does not convert her private action into state action.  *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 n.21 (1982).  Nor does Goldberg's conduct in filing a police report and complaining to law enforcement authorities about Weik deem her a "state actor."  *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989).

Similarly, the "joint action" test, on which Weik relies in this case, provides that a private individual or entity may "be liable under § 1983 if [the private party] conspired or entered joint action with a state actor."  *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).  The test considers "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin*, 312 F.3d at 445.  Joint action may exist where "the state has so far insinuated itself into a position of interdependence with the private entity that it

must be recognized as a joint participant in the challenged activity." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 926 (9th Cir. 2011). Joint action requires willful, joint participation between the state and private actors wherein "the state knowingly accepts the benefits derived from unconstitutional behavior." *Id*. (citations and quotations omitted).

Here, Weik argues that Goldberg, Broad, and Vilhuber engaged in "joint action" with each other resulting in harm to Weik. But he fails to allege the three Defendants engaged in any joint action with a state actor.

Finally, Weik argues that with respect to Goldberg's legal proceedings in the state courts Goldberg obtained assistance from an unidentified "public advocate" made available to her through public funds. Weik relies upon the Supreme Court's holding in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) in support of his argument. The Court in *Burton* recognized that the action of a private party operating a commercial business within a state-owned and publicly-funded building could qualify as "state action" if the state authority "so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private'." *Burton*, 365 U.S. at 725.

The holding in *Burton* fell under the joint action test. But again, Weik's allegations do not satisfy that test. Weik does not present any factual allegations plausibly suggesting that the unidentified public advocate who assisted Goldberg in her legal proceedings acted pursuant to state authority that placed the State and the advocate into a position of interdependence with Goldberg. Weik's allegations do not suggest that any state authority, through the alleged public funding for the advocate, rendered either the State or the advocate a joint participant in Goldberg's legal actions. The mere receipt of a state-furnished benefits or services, without more, does not convert private action into state action. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972).

Based on the foregoing, Weik's allegations do not state any claim under 42 U.S.C. § 1983. The facts do not plausibly suggest that any of the Defendants acted under color of state law, or engaged in conduct that qualifies as "state action".

**B.      42 U.S.C. § 1985**

Weik cites to 42 U.S.C. § 1985 as one of the statutory grounds for his claims. But the Court finds Weik's allegations do not state a viable claim under section 1985.

The provisions of section 1985 generally prohibit two or more individuals

from engaging in a conspiracy to deprive an individual of civil rights in specific

circumstances. Portions of section 1985, however, require that a plaintiff must

allege and prove that the defendants conspired to deprive plaintiff of civil rights,

and that defendants were "motivated by 'some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action.'"

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (citation

omitted) (addressing claim under section 1985(3)). A cognizable claim under the

second part of section 1985(2), for example, "'requires an allegation of class-

based, invidiously discriminatory animus.'" *Bagley v. CMC Real Estate Corp.*,

923 F.2d 758, 763 (9th Cir. 1991) (citation omitted).

Weik's claims do not include any allegations asserting that the Defendants

were motivated by any racial, or class-based discriminatory intent. Therefore,

Weik fails to sufficiently state a claim for relief under either the second part of 42

U.S.C. § 1985(2), or the first part of § 1985(3).

Weik accurately notes that other provisions in section 1985, such as the first

part of section 1985(2), do not require allegations of a racial, or class-based,

discriminatory animus that motivated the defendants' actions. *See e.g. Kush v.*

*Rutledge*, 460 U.S. 719, 726 (1983). But those sections of the statute pertain to

circumstances which implicate federal interests only in limited situations. For

example, the first part of section 1985(2), as applicable in *Kush*, prohibits civil rights conspiracies in connection with federal judicial proceedings. *Kush*, 460 U.S. at 724-25.

Weik relies upon the first part of section 1985(2) and *Kush* to argue that he does not need allegations of class-based discrimination. But the facts alleged in his pleading do not involve an alleged conspiracy to deprive Weik of his civil rights in connection with any judicial proceedings in federal court. Weik's allegations refer only to a judicial proceeding for a restraining order and a civil action, each of which occurred in a state or county court, not a federal court. Therefore, the Court concludes Weik's allegations fail to state a claim for relief under *Kush* and the first part of section 1985(2).

### C.    42 U.S.C. § 1988

Weik references 42 U.S.C. § 1988 as grounds for this Court's jurisdiction and for a claim for relief. But section 1988 does not provide an independent federal cause of action for a violation of federal civil rights. *Moor v. County of Alameda*, 411 U.S. 693, 703-04 & n.17 (1973). Therefore, Weik's pleading fails to state any claim for relief under section 1988.

### D.    18 U.S.C. §§ 241 and 242

Weik cites to the criminal offenses set forth in 18 U.S.C. §§ 241 and 242 as

grounds for his legal claims alleging Defendants violated his civil rights, and engaged in a conspiracy to do so.  But these two criminal statutes are enforced only by the United States and "provide no basis for civil liability."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citation omitted).  Weik's claims under sections 241 and 242 are, therefore, subject to dismissal.

### E.    The Sherman Act and the Clayton Act

Weik's allegations purport to advance a claim for anti-trust violations under the Sherman Act, 15 U.S.C. § 1, et seq., and the Clayton Act at 15 U.S.C. § 15. For the reasons discussed, Weik's allegations fail to state any such claims.

The Sherman Act, adopted in 1890, contains various provisions which prohibit certain conduct "in restraint of trade" for the purpose of promoting free market competition.  *Knevelbaard Dairies v. Kraft Food, Inc.*, 232 F.3d 979, 985-86 (9th Cir. 2000).  The Clayton Act at 15 U.S.C. § 15(a), in turn, permits individuals to file private lawsuits to enforce the Sherman Act.  *Id*. at 987. Specifically, the Clayton Act provides that:

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor [...] and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a).

Despite the broad language in section 15(a), "Congress did not intend to

afford a remedy to everyone injured by an anti-trust violation simply on a showing of causation." *Knevelbaard Dairies*, 232 F.3d at 987. Thus, as discussed, claims under the Sherman Act and the Clayton Act require detailed, fact-intensive allegations supporting specific, required elements.

First, the Clayton Act requires that a plaintiff have "antitrust standing" which requires an evaluation of "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id*. (quoting *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535 (1983)). The factors relevant to the evaluation of antitrust standing are:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages.

*Knevelbaard Dairies*, 232 F.3d at 987 (quoting *American Ad Management, Inc. v. General Telephone Co.*, 190 F.3d 1051, 1054-55 (9th Cir. 1999)).

The first of the foregoing factors – "the nature of the plaintiff's alleged injury" – requires that a plaintiff allege the existence of an "antitrust injury."[1] *Knevelbaard Dairies*, 232 F.3d at 987. An antitrust injury requires allegations

---

[1]An "antitrust injury" is a threshold requirement for a damages claim under the Clayton Act at 15 U.S.C. § 15(a). *Somers v. Apple, Inc.*, 729 F.3d 953, 964 n.5 (9th Cir. 2013). The antitrust injury is a substantive element which must be alleged in the pleading. *Id*. at 963.

demonstrating: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *American Ad Management, Inc.*, 190 F.3d at 1055)). The Ninth Circuit has further imposed a fifth element requiring "that the injured party be a participant in the same market as the alleged malefactors, meaning the party alleging the injury must be either a consumer of the alleged violator's goods or services[,] or a competitor of the alleged violator in the restrained market." *Somers*, 729 F.3d at 963 (citations and quotations omitted). The requisite antitrust injury that "is of the type the antitrust laws were intended to prevent" requires that the defendant's conduct must "adversely affect[] competition generally," and not just result in harm only to the plaintiff. *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

Weik's allegations and arguments in support of his Clayton Act claims are limited. He argues that Goldberg removed his contact telephone number associated with the Misty Blu Trail Rides business, removed that business's website from the internet thereby blocking public access to the business, and made statements to a prospective customer that were damaging to the business because that customer posted adverse comments about the business on the internet. But

Weik does not expressly identify any specific provision of the Sherman Act or the Clayton Act upon which his claim is based. And his allegations do not assert that Goldberg's conduct adversely affected competition in general.

Weik's allegations in his Amended Complaint supporting his Clayton Act claim provide a little more detail. He alleges that "Defendants acted in a cooperative behavior" causing "restraint of trade and interstate commerce of Plaintiff's business." (Doc. 7-1 at 36.) He alleges Defendants acted to harm his businesses and to cause him damages. (*Id*.) Defendants allegedly denied the public access to his businesses and deprived him of the ability to operate his businesses. (*Id*. at 37.)

Liberally construed, the foregoing allegations in Weik's pleading purport to advance a claim for a violation of section 1 of the Sherman Act at 15 U.S.C. § 1 which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce[.]" Section 1 bars "unreasonable restraints" on trade which are evaluated under the "rule of reason." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). To state a claim under section 1 and the "rule of reason", a plaintiff:

> must plead facts which, if true, will prove "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures

competition[,]" [and] (4) that [the plaintiff was] harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an "anti-competitive aspect of the practice under scrutiny."

*Brantley*, 675 F.3d at 1197 (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).

Again, under this third element – conduct which "actually injures competition" – and consistent with the general discussion above, a plaintiff must plead sufficient factual allegations which plausibly suggest that defendants engaged in conduct that caused an actual injury to "competition," i.e. that the conduct had an anti-competitive effect. *Brantley*, 675 F.3d at 1198. Specifically, a plaintiff must plead facts demonstrating "an injury to competition beyond the [isolated] impact on the plaintiff[.]" *Id*. A plaintiff "may not substitute allegations of injury to the claimant[] for allegations of injury to competition." *Id*., at 1200.

The Court finds that Weik's allegations do not satisfy the requisite elements of a claim under the Clayton Act and 15 U.S.C. § 1. His allegations do not include any facts plausibly suggesting that Defendants' conduct caused an actual injury to market competition as required under the Sherman Act. Rather, his factual allegations assert only that Defendants' conduct harmed only him and his businesses. Absent factual allegations alluding to an injury to competition in general, Weik's pleading fails to state a claim to relief under the Sherman Act that

is plausible on its face and, therefore, is subject to dismissal. *Brantley*, 675 F.3d at 1204.

### F.      Supplemental Jurisdiction Over Weik's State Law Claims

Based on the foregoing, the Court concludes that all of Weik's federal claims over which the Court possess original jurisdiction should be dismissed. Therefore, the Court must consider whether it should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any other claims Weik advances under Montana law.

Section 1367 provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between

the state and federal claims." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Because the Court recommends dismissing all of Weik's federal claims, it is further recommended that the District Court decline to exercise supplemental jurisdiction over Weik's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Any claims Weik may have under Montana law are matters of state and local concern, and are more properly addressed in the courts of the State of Montana.

### G.   Dismissal Without Leave to Amend

Although a district court should ordinarily grant a pro se plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995), "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

Here, in view of the deficiencies in Weik's allegations, the Court concludes that under the factual background and circumstances of this case Weik could not cure the deficiencies in his federal claims if he were given a second chance to amend his pleading. Where a litigant was notified of deficiencies in his allegations, and afforded an opportunity to amend the claims, if the litigant files an amended pleading which fails to cure the deficiencies, then the court may

conclude that the deficiencies cannot be cured by further amendment and the court need not afford the litigant an additional opportunity to amend. *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008). A "repeated failure to cure deficiencies by amendments" is sufficient to justify a dismissal without leave to amend. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Weik had notice of the deficiencies in his pleading based on Defendants' motion to dismiss. His Amended Complaint did not cure those deficiencies, and the Court need not afford him yet another opportunity to amend.

## V.     Conclusion

For the reasons discussed, IT IS ORDERED that Weik's motion for leave to file an amended complaint is DENIED as unnecessary due to the provisions of Fed. R. Civ. P. 15(a)(1)(B). The Clerk of Court is directed to file Weik's Amended Complaint (Doc. 7-1) as of July 14, 2014.

IT IS RECOMMENDED that Defendants' motion to dismiss, as applied to Weik's Amended Complaint, be GRANTED, and Weik's Amended Complaint be DISMISSED.

DATED this 12th day of September, 2014.

Jeremiah C. Lynch
United States Magistrate Judge